UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUQUIL LOVE,

                Petitioner,

                                                Case No. 09-10014

v.                                           Honorable David M. Lawson

NICK J. LUDWICK,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Duquil Dion Love was convicted by a Wayne County, Michigan jury of two counts of assault with intent to rob while unarmed and one count of being a felon in possession of a firearm and sentenced to prison. Love contends in his petition for a writ of habeas corpus under 28 U.S.C. § 2254 that his convictions and sentences are unconstitutional because there was insufficient evidence of his firearm possession, improper jury instructions, improper sentencing, violation of his right to a speedy trial, trial court error in coercing the jury into reaching a hasty verdict, and prosecutorial misconduct. The respondent has filed an answer to the petition, contending that the petitioner's claims lack merit. The Court agrees and finds that the petitioner's convictions and sentences are constitutionally sound. Therefore, the Court will deny the petition.

I.

The date of the offenses was June 27, 2005. It appears that the petitioner was involved in other criminal activity on that same date. He was convicted by another jury of assault with intent to rob while armed, being a felon in possession of a firearm, and felony firearm in a second case in the Wayne County, Michigan circuit court for a separate robbery attempt that also occurred on June

27, 2005. He was sentenced to substantial prison terms for those crimes. The habeas petition now before this Court does not address those other convictions.

The petitioner was brought to trial in the present case on January 17, 2006. That proceeding ended in a mistrial because the jury could not reach a unanimous decision. The Michigan Court of Appeals summarized the facts adduced at the second trial, which began on March 29, 2006, in this case as follows:

> This case arises out of a botched armed robbery at a gas station in Detroit, Michigan, at approximately 1:00 a.m. on June 27, 2005. According to witnesses, defendant and Shamarrie Bright[] exited the same car and approached two men, Anthony Bynum and Maurice Murphy, while they were pumping gas. A third person was sitting in the victims' car. Initially, Bright pointed an automatic revolver at the two men and stated, "run y'all pockets." Within moments, another man, later identified as defendant, approached the two men as well. One of the men was an off-duty campus security officer and was licensed to carry a concealed weapon. Fearful that defendant might discover the gun and use it against him, he pulled his weapon and shot both Bright and defendant. At trial, defendant claimed that he heard shots fired while he was in the gas station, and when he approached the subjects, he was shot.
> . . .
> Bynum testified that he was having a conversation with Murphy while Murphy pumped gas into his car, when Bright got out of the passenger side of a nearby car, pointed a gun at Murphy, and told both Murphy and Bynum to empty their pockets. Defendant then emerged from the driver's side of the same car and searched Bynum's pockets. Lesley Washington, Bynum's then-girlfriend, sat in the backseat of Murphy's car and witnessed defendant search Bynum's pockets. Murphy testified that while Bright pointed a gun at him, Bright's accomplice searched defendant [sic]. Although Murphy did not get a good look at the man searching Bynum, the record readily supports the inference that the accomplice was defendant.

*People v. Love*, No. 270410, 2007 WL 2713416, at *1 (Mich. Ct. App. Sept. 18, 2007) (footnote omitted).

Bright testified at trial that the petitioner knew nothing of the robbery until it was over. She had pleaded guilty on August 26, 2005.

-2-

The petitioner also testified at trial consistent with Bright's testimony, claiming that he did not know about the robbery until it was over.  Both Bright and the petitioner were shot during the incident.

After three days of deliberations, the jury convicted the petitioner of the stated charges.  He was sentenced as a fourth habitual offender to concurrent prison terms of nineteen to thirty years for each of the two assault convictions and five to fifteen years for the felon-in-possession conviction.

The petitioner filed a direct appeal, and the Michigan Court of Appeals affirmed his convictions on September 18, 2007.  *Love*, 2007 WL 2713416, at *4.  The Michigan Supreme Court denied his application for leave to appeal on January 30, 2008.  *People v. Love*, 480 Mich. 1044, 743 N.W.2d 880 (2008).

The petitioner filed this habeas petition on January 5, 2009, raising the following claims:

I.  The evidence presented at [the petitioner's] trial [was] insufficient to convict him of felon in possession of a firearm.

II.  The failure to instruct [the petitioner's] jury that assault with intent to rob unarmed requires a specific intent and that aiders and abettors must also have that same specific intent constitutes reversible error as it denied him a fair trial.

III.  [The petitioner] is entitled to resentencing because the incorrect scoring of Offense Variable 4 in the sentence information report used at [his] sentencing resulted in [him] being sentence[d] based upon the incorrect recommendation and sentencing grid.

IV.  [The petitioner] is entitled to a reversal and dismissal of his convictions where he was denied the right to a speedy trial under the Federal Constitution and under the 180 day speedy trial act.

V.  [The petitioner] is entitled to reversal of his conviction[s] and sentence where, after three days of deliberations, the trial judge coerced the jury into a hasty verdict.

VI.  [The petitioner] is entitled to reversal of his conviction where the right to a fair trial was violated when, after a mistrial, the prosecutor allowed key witnesses to read

-3-

each others' testimony from the prior trial, despite the fact that a sequestration order was in effect.

Pet. at 4, 6, 7, 9, 12, 13, 15-17. The respondent filed an answer in opposition to the petition.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

-4-

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, --- F.3d ---, ---, 2012 WL 833179, at *5 (6th Cir. Mar. 14, 2012). The court suggested that

-5-

*Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 2012 WL 833179, at *5; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

## A.

In his first habeas claim, the petitioner alleges that there was insufficient evidence to support his felon-in-possession conviction. The respondent contends that the Court should not reach that argument under the concurrent sentencing doctrine because the petitioner is serving concurrent

sentences of nineteen to thirty years for each of his assault convictions, and those sentences will not have expired by the time the petitioner reaches the maximum term of his firearm conviction.

Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989) (citations omitted); *see also United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992) (same). The doctrine is a discretionary one, *see Hughes*, 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine," *Dale*, 878 F.2d at 935 n.3; *see also Winn v. Renico*, 175 F.App'x 728, 732 (6th Cir. 2006) (same). The doctrine is applicable only "when there is no possibility of adverse 'collateral consequences' if the convictions stand." *Winn*, 175 F. App'x at 732 (citations omitted); *Dale*, 878 F.2d at 935 n.3. Here, it cannot be said that there is no possibility of adverse consequences. This conviction may implicate petitioner's suitability for parole, and it could form the basis for enhanced penalties later. Therefore, the Court declines the respondent's invitation to abstain from addressing the issue.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id.* at 788. "The mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id.* at 788-89. The Court need not be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, --- U.S. ---, ---, 130 S. Ct. 665, 673 (2010) (citations omitted).

To prove the crime of being a felon in possession of a firearm under Michigan law, the State must prove (1) that defendant is a convicted felon who is prohibited from possessing a firearm and (2) is in possession of a firearm. Mich. Comp. Laws § 750.224f; *People v. Perkins*, 262 Mich. App 267, 270-271; 686 NW2d 237, 240 (2004).

The Michigan Court of Appeals applied the *Jackson* standard in addressing this issue (although it did not cite the case) and concluded that there was sufficient evidence presented to sustain the petitioner's conviction. After reciting the elements of the crime, the court reasoned:

> Here, it was stipulated that defendant had previously been convicted of a felony and was ineligible to possess a firearm at the time of the offense. A review of the record supports the conclusion that defendant had knowledge of the presence of the firearm carried by his accomplice, Shamarrie Bright, and the firearm was reasonably accessible to defendant. Bynum testified that he was having a conversation with Murphy while Murphy pumped gas into his car, when Bright got out of the passenger side of a nearby car, pointed a gun at Murphy, and told both Murphy and Bynum to empty their pockets. Defendant then emerged from the driver's side of the same car and searched Bynum's pockets. Lesley Washington, Bynum's then-girlfriend, sat in the backseat of Murphy's car and witnessed defendant search Bynum's pockets. Murphy testified that while Bright pointed a gun at him, Bright's accomplice searched defendant [sic]. Although Murphy did not get a good look at the man searching Bynum, the record readily supports the inference that the accomplice was defendant.

> Although Bright claimed that defendant knew nothing of the robbery until it was over, the evidence shows otherwise. Given the collaborative nature of the robbery, it is difficult to conceive that defendant did not know that Bright possessed a gun or that the gun, a mere few feet away from defendant and in the hands of his accomplice, was not reasonably accessible to defendant. Accordingly, a rational jury could find that the elements of felon in possession of a firearm were proven beyond a reasonable doubt.

> Aiding and abetting is an additional theory upon which to find defendant guilty of felon in possession of a firearm. To establish aiding and abetting, a prosecutor must show that: (1) the charged crime was committed by the defendant

-9-

or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave the aid and encouragement. The evidence here was that Bright, a felon ineligible to possess a firearm, confronted Murphy and Bynum with a firearm and directed them to empty their pockets. Defendant knew that Bright possessed a firearm, and defendant assisted Bright in the possession of a firearm by searching Bynum's pockets and wrestling with Bynum in an attempt to subdue him. A rational jury could have found defendant guilty beyond a reasonable doubt of this charge as an aider and abettor.

*Love*, 2007 WL 2713416, at *1-2 (citations omitted).

Possession of a firearm under Michigan law can be actual or constructive and can be proven by circumstantial evidence. *See People v. Hill*, 433 Mich. 464, 469-70, 446 N.W.2d 140, 142-43 (1989). A defendant may have constructive possession of a firearm if its location is known to the defendant and if it is reasonably accessible to him. *Id.* at 470-71. In this case, there was sufficient evidence for a rational trier of fact to find that the elements of felon in possession of a firearm were proven beyond a reasonable doubt.

As the court of appeals noted, the record supports a finding that the petitioner had constructive possession of the firearm and his actions reflected joint dominion and control over it. The victim in this case, Bynum, testified at trial that, while Bright was holding him at gunpoint, the petitioner exited the car and searched him. The two were acting in unison to perpetrate the robbery. Although the petitioner did not hold the weapon, a jury could infer that, through his concerted action, he was acting in unison with Bright toward the common goal of robbing Bynum and was acting in such a manner based on the seeming advantage that Bright had in being armed. Furthermore, it was stipulated that the petitioner was previously convicted of a felony and his right to possession had not been restored.

-10-

This issue was vigorously contested at trial and the jury made its call. However, because the resolution was not favorable to the petitioner does not mean that the evidence was insufficient to support his conviction. The court of appeals properly applied *Jackson*. Habeas relief is not warranted on this claim.

B.

The petitioner next argues that he was denied a fair trial when the trial court failed to instruct the jury on the intent necessary to establish assault with intent to rob and that aiders and abettors must also have that same specific intent. The Michigan Court of Appeals addressing this issue found that the petitioner's argument was waived because trial counsel expressed approval with the instruction as given. The respondent argues that the doctrine of invited error applies. The Court finds that the invited error doctrine does not apply. However, because the Michigan Court of Appeals relied on counsel's expression of approval of the jury instructions as given to reject the petitioner's claim, the issue is procedurally defaulted. *See McKissic v. Birkett*, 200 F. App'x 463, 471 (6th Cir. 2006).

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., make a contemporaneous objection or file a motion for a directed verdict, *see Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is

-11-

actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575-76 (6th Cir. 2002).

The failure to make a contemporaneous objection or request is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 762-63, 597 N.W.2d 130, 138 (1999); *see also Coleman*, 501 U.S. at 750-51 (same). In this case, the Michigan Court of Appeals denied relief based on the petitioner's acceptance of the jury instructions, i.e., his failure to object to those instructions at trial.

"The Court may review a prisoner's procedurally defaulted claims on the merits only if he shows cause for not raising his claims at all levels of state court review and prejudice, or that he is actually innocent of the crimes for which he was convicted." *Mohn v. Bock*, 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996), and *Hannah v. Conley*, 49 F.3d 1193, 1195-96 n.3 (6th Cir. 1995)); *see also Coleman*, 501 U.S. at 750-51; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, the petitioner cannot establish prejudice because the jury instructions did not render the trial fundamentally unfair. Generally, challenges to jury instructions are not cognizable on federal habeas review unless the instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citation and quotation marks omitted). It is not enough to show that an instruction was incorrect under state law. *Id.* at 71-72. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (citations omitted). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the

instruction 'in an unconstitutional manner.'" *Id.* at 455 (quoting *Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

Here, the trial court instructed the jury on the theory of aiding and abetting, stating:

> Anyone who intentionally assist[s] someone else in committing this crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abett[o]r.
> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
> First, that the alleged crime was actually committed either by the Defendant or someone else. It does not matter whether anyone else has been convicted of the crime.
> Second, that before or during the crime the Defendant did something to assist another in the commission of the crime.
> Third, the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of giving the assistance.
> It does not matter how much help, advice, or encouragement the Defendant gave. However, you must decide whether the Defendant intended to help another commit the crime and whether his help, advice, or encouragement actually did help, advise, or encourage the crime.

Trial Tr., Vol. V, Apr. 5, 2006, at 130-131.

The petitioner has not shown that those instructions are erroneous or that they rendered his trial fundamentally unfair. Taken as whole, they adequately portray the concept of aiding and abetting. Moreover, even if the instructions were improper in some way, the petitioner is not entitled to relief because any error was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The testimony at trial supported the instruction; the petitioner assisted Bright in the possession of a firearm by searching Bynum's pockets and wrestling with him in an attempt to subdue him. Therefore, any error in the aiding and abetting instruction was harmless and could not support a finding of prejudice. Habeas relief is not warranted on this claim.

-13-

C.

The petitioner next argues that the trial court erred when it assessed him ten points for Offense Variable (OV) 4 to reflect serious psychological injury to the victims, Bynum and Murphy. Both Bynum and Murphy testified at trial that they were terrified by the incident. Looking at the totality of the circumstances surrounding the robbery, the trial court found that those circumstances supported a finding that Bynum and Murphy suffered serious psychological injury and left OV 4 scored at ten points.

A claim that the state trial court incorrectly scored, calculated, or applied the state legislative sentencing guidelines is not cognizable for federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006) (citing *Estelle*, 502 U.S. at 67). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999).

Habeas relief therefore is not warranted with respect to this claim.

D.

In his fourth habeas claim, the petitioner alleges that he was denied his right to the "180 day speedy trial act." Pet. Addendum. The petitioner asserted this claim in his supplemental brief filed in the court of appeals. The respondent alleges that this claim is not cognizable. He is correct.

The "180-day Speedy Trial Act" is a unique feature of state law that requires a prison inmate who is the subject of an untried criminal charge to "be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which

-14-

the . . . information[] or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the . . . information[] or complaint." Mich. Comp. Laws § 780.131(1); *see also* Mich. Ct. Rule 6.004(D)(1). The remedy for violation is dismissal of the charges. *See* Mich. Ct. Rule 6.004(D)(2). However, these provisions are matters of state law. There is no suggestion that they create federal constitutional rights by themselves. And as noted above, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley*, 465 U.S. at 41.

The petitioner does have a federal constitutional right to a speedy trial, however. U.S. Const. amend. VI; *see also Klopfer v. North Carolina*, 386 U.S. 213, 221 (1967) (holding that the right to a speedy trial is incorporated through the Fourteenth Amendment and thus applies to the states). But that right was not abridged. According to the court docket sheet, the petitioner was arraigned on the arrest warrant on June 29, 2005. His preliminary examination was held on July 11, 2005, at which time he was bound over for trial. The petitioner was arraigned on the information in circuit court on July 18, 2005, and a final conference was held on August 26, 2005, at which defense counsel filed a motion to withdraw, which was granted. On October 14, 2005, a pre-trial conference was held. The petitioner's motion to suppress his criminal record was granted in part on November 11, 2005, and his motion to quash the information was denied that same date. Trial was scheduled for December 13, 2005, but was adjourned by the trial court to January 17, 2006. Trial began on that date. However, the jury was unable to reach a verdict and a mistrial was declared on January 26, 2006 because of a hung jury. The petitioner's second trial, which resulted in the present convictions, began on March 29, 2006.

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), set forth a four-factor test for evaluating a Sixth Amendment speedy-trial claim: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530. None of those four factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Applying those factors here demonstrate that the petitioner's speedy-trial rights were not violated.

The length of the delay is a threshold factor for any Sixth Amendment speedy-trial claim. *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir. 2007). "That is, if there is no delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007); *see also Doggett v. United States*, 505 U.S. 647, 651-52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.").

The Court must determine first whether the delay here was "uncommonly long" or "extraordinary." *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006) (citations omitted). A delay approaching one year is presumptively prejudicial. *Doggett*, 505 U.S. at 652 n.1. The length of the delay is measured from the earlier of the date of the indictment or the date of the arrest. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005).

Here, the delay of nine months was not uncommonly long.  Therefore, the Court need not take the *Barker* inquiry further. There is no constitutional violation resulting from the lapse of time between arrest and the second trial, and no habeas relief is warranted on this issue.

E.

In his fifth habeas claim, the petitioner asserts that the trial court coerced the jury into reaching a hasty verdict.  During jury deliberations, a juror sent a note to the trial judge stating that he would have to forfeit a paid vacation if he had to return the following day.  After a discussion with the juror, the trial court announced that if the jury was unable to reach a verdict by the end of the day, then deliberations would be suspended until the juror returned from his vacation.  Later that morning, the jury returned a verdict.

An instruction that appears to give a jury no choice but to return a verdict is impermissibly coercive.  *See Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam).  In *Jenkins*, after about two hours of deliberation, the jury sent a note informing the district judge that it was deadlocked.  The district judge called the jury into the courtroom and "in the course of his response stated that 'You have got to reach a decision in this case.'"  *Ibid.*  The Supreme Court found the instruction to constitute plain error and reversed and remanded the case for a new trial.  *Ibid.*; *see also Brasfield v. United States*, 272 U.S. 448, 450 (1926) (concluding that an inquiry into how the jury is divided is unduly coercive).

In addressing and rejecting this issue, the Michigan Court of Appeals stated:

> There is no indication that the jury was coerced into reaching a hasty verdict. Unlike the fact scenario cited by defendant in *People v. Malone*, 180 Mich App 347; 447 NW2d 157 (1989), there is no reason provided by defendant or by our review of the record to find that the jury in this case was given the impression that it would be permanently discharged if it did not reach a verdict by the end of the day.  For that reason, we find this court's opinion in *Vettese, supra*, controlling.  In *Vettese*, the

-17-

trial court instructed the jury that if it did not reach a verdict by 5:00 p.m., they would be excused for the day and be asked to return at 8:30 a.m. the following morning. This Court concluded, "[i]t is clear that the trial court's instruction was not coercive and merely indicated that the jurors would have to return the next day if they did not reach a verdict by 5:00 p.m. There is nothing in the trial court's instruction to suggest that the juror had to reach a verdict by that time." *Id.* Similarly, in this case, there was no suggestion by the trial court that the jury must reach a verdict by the end of the day merely by telling them they would have to return at a later date. Nor do we find it inherently coercive for a trial court to suggest to a sitting jury that a scheduling exigency may require the jury to suspend deliberations for a time and resume at a later date. Because the trial court did not err in such an instruction, there cannot be a claim of ineffective assistance of counsel for failure to request an additional instruction.

*Love*, 2007 WL 2713416, at *4.

The petitioner's argument that the trial court coerced the jury into rendering a hasty verdict is not supported by any proof. There was no coercive deadlocked jury instruction. *See Allen v. United States*, 164 U.S. 492, 501 (1896) (a judge may encourage jurors who are having difficulty reaching a verdict to deliberate longer). There was no instruction setting time limits or deadlines for a verdict. There is no indication that the jury panel was even aware they might have to return if a verdict was not reached that day. Moreover, even if the jurors were somehow under the impression they might have to return ten days later, the petitioner has failed to point to any clearly established federal precedent that would have been violated had that occurred.

The Michigan Court of Appeals properly applied federal precedent when it found no coercion in the trial court's suggestion to a sitting jury that a scheduling exigency may require the jury to suspend deliberations for a time and resume at a later date. Even if the jurors in the present case were told they might have to come back, the petitioner cannot show coercion, for it would be just as likely in such a circumstance that a jury would acquit a defendant or inform the trial court that they were wholly unable to reach any verdict as it would be for a jury to convict a defendant.

-18-

The Court concludes that the petitioner has failed to establish that the Michigan Court of Appeals's decision rejecting this claim was contrary to or an unreasonable application of clearly established Supreme Court precedent. Habeas relief is not warranted.

F.

In his final habeas claim, the petitioner alleges that the prosecution committed misconduct by allowing key witnesses to read each others' testimony from his first trial, despite the fact that a sequestration order was in effect. The court of appeals acknowledged that the petitioner's supplemental brief included claims of prosecutorial misconduct. It then found the claims without merit, without discussion. However, the trial court did address the argument when ruling on a trial objection to one of the witnesses testifying. It is that decision to which deference under AEDPA applies. *See Wolfe v. Bock*, 412 F. Supp. 2d 657, 676 (E.D. Mich. 2006) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett*

-19-

*v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).  "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'"  *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Before the start of the petitioner's second trial, transcripts from the first trial were prepared. Witnesses reviewed the testimony prepared at the first trial, and the petitioner contends that the preparation by the State's witnesses constituted prosecutorial misconduct and violated the trial court's sequestration orders.  During both trials, the court ordered witnesses to be sequestered outside of the courtroom when not testifying.  During the petitioner's second trial, defense counsel moved to strike the testimony of one witness on the ground that the assistant prosecuting attorney's conduct in allowing the witness to read transcripts of testimony from the first trial violated the sequestration order from the first trial.  The trial court rejected that argument and held that the prior order of sequestration was extinguished when that trial ended.

Here, the petitioner has failed to show that the prosecutor violated a specific right or that the prosecution's preparation of trial witnesses rendered the trial fundamentally unfair.  The petitioner cites no court order, appellate opinion, or Supreme Court precedent precluding the review of prior testimony by a witness.  More importantly, when the petitioner alleged a violation of the sequestration orders, the trial court specifically rejected his argument and found that no violation had occurred.  Even if the petitioner could show the prosecution committed misconduct, he cannot show that this issue permeated the entire atmosphere of the trial or prejudiced the defense.  Defense counsel was able to cross-examine the witnesses regarding their preparation and whether they had reviewed the testimony of others.

The Court concludes that the state trial court's decision was not contrary to nor an unreasonable application of federal law as established by the Supreme Court.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 23, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 23, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---